**Thomas V. REINAUER, Appellant**

v.

**David L. LADD, Commissioner of Patents, Appellee.**

**No. 16197.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 24, 1961.

Decided May 11, 1961.

Mr. Paul S. Bolger, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court with whom Messrs. Raymond J. Mawhinney and A. Robert Theibault, Washington, D. C., were on the brief, for appellant.

Mr. Joseph Schimmel, Deputy Solicitor, United States Patent Office, with whom Mr. Clarence W. Moore, Solicitor, United States Patent Office, was on the brief, for appellee.

Before PRETTYMAN, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Appellant claimed a certain improvement in a method of cleaning dust collectors. The Patent Office Board of Appeals had affirmed its Primary Examiner who rejected Reinauer's application of June 12, 1957, Serial No. 665270 in view of the disclosure of U. S. Patent No. 2,804,-168 to Church. The District Court dismissed appellant's action based on 35 U.S.C. § 145, finding that Reinauer's "Claims 1 through 5 inclusive define a process which does not distinguish from that disclosed in the Church patent in a patentable sense"; that "Claims 9 and 10 define an apparatus which is substantially anticipated by the apparatus structure disclosed in the Church patent"; and that the mentioned claims "do not define unobvious subject matter" in view of Church. This appeal attacks those findings.

Appellant on brief notes that Claims 2 through 5 are dependent on method Claim 1, and likewise concedes that apparatus Claims 9 and 10 stand or fall with method Claim 1 which reads:

"In that method of filtering a gaseous fluid in which a normally established flow of said fluid is moved toward and through a permeable filter medium which defines, at least in part, the walls of a chamber having an ever-open opening through which the fluid passes during said flow, the improvement of maintaining filter medium permeability during said filtering by momentarily and simultaneously stopping said normal flow through said

ever-open opening and reversing the direction of flow of fluid through said filter medium *by periodically releasing a burst of a small volume of high energy gaseous fluid* over the cross-sectional area of said opening and through said opening *to induce passage through said opening of a larger volume of ambient fluid* and to cause an abrupt momentary relative pressure rise in the down stream side of said filter medium and a short sudden reverse flow of fluid through the said filter medium."

The problem involves the removal of heavy concentrations of industrial dust from air or gas streams bearing such dusts. It is desirable that the dust collection process be continuous, which in turn requires that the permeability of the filter medium be maintained. The more effective the filter medium, the more certainly it collects dust, becomes coated with solid particles, and so is rendered non-permeable.

Church, applying his concept of reverse flow cleaning, set out to renew constantly the permeability of the filter medium without destroying the essential continuity of the operation of the dust collection process. Stated simply, he periodically releases a burst—not over 1/10 second—of high energy gaseous fluid over the cross sectional area of the "ever-open opening" and through that opening, thus simultaneously and momentarily stopping and reversing the normal flow through the opening. Thus dust, instead of forming a filter cake which would block the porous filter, is forced off the filter medium, drops to a collector and is removed, while the permeability of the filter is maintained and the clean air continues to flow.

The operation of the Church device inherently involved the induction of some "ambient" air,[1] perhaps up to 20% of the volume of the high energy air. Appellant argues that Church desired to keep to a minimum the volume of induced air.

As we see it, the fact remains that Church taught a method by which the flow of induced air combined with high energy air might be stopped and reversed in periodic short bursts with substantially continuous flow, with a highly desirable cleansing or filtering result.

Referring again to Claim 1, we find italicized appellant's claim to improvement over Church since appellant sought to induce "a larger volume of ambient fluid." This is the "gist" of appellant's improvement, we are told on brief. Otherwise it is stated, "The gist of plaintiff's procedure is that the basic method of Church be so *manipulated* as to *cause* the induction of ambient, or low energy, air in amounts in excess of the high energy air." (Emphasis added.)

The present assignee of both the Church patent and the Reinauer application for some years has manufactured and sold the dust collecting device known as Mikro-Pulsaire. Therein is embodied appellant's modification of the Church procedure, with highly satisfactory results, the volume of induced ambient air being three or more times the volume of the high energy air. We may conclude that Reinauer has contributed substantially by his improvement, but we fail to see wherein the findings of the trial judge are shown to have been erroneous. On the contrary, it would appear that the basic solution was effected by Church. That the energy jet has been differently spaced, or so arranged as to induce a "larger volume" of ambient fluid, we have no doubt. We fail to see in Reinauer's Claim 1 anything more than that he desired a "larger" volume than Church had taught was inherently available in his concept. Reinauer teaches no new step in his Claim 9, asserting only a means "shaped" to facilitate an inductive flow, where Church already yielded induction.

Comparing Church with the Mikro-Pulsaire, the evidence disclosed that Church set a ¼ inch nozzle opposite a

---

1. That is, lower energy air flowing through the clean air chamber of the collector.

venturi tube with ⁵⁄₁₆ inch clearance as he sought to inject high energy air. Church could have avoided some induction only by setting the nozzle firmly in contact with the venturi.

"Q. Isn't it true also that the amount of induction would depend on the distance between the two tubes? A. That would be one of the factors.

"Q. And that would be a factor that would be commonly known to those skilled in the art, wouldn't it? A. Oh, yes. If a man knew that he wanted induction, he would have no trouble in arranging the nozzles and venturis and the chambers to promote induction rather than suppress it."

The Mikro-Pulsaire induced more air, not only because of the arrangement of the nozzle and the venturi tube, but because of the "shape of the venturi; the relation of the size of the venturi to the diameter of the nozzle; the spacing of the nozzle to the venturi; and the presence of a large chamber from which the ambient fluid would flow."

So went the testimony of one of the experts. Another, questioned as to the Church disclosure concerning inductive flow, answered:

"A. Well, I think that I am well aware of the fact * * * that it is precisely the arrangement of these parts and their relative sizes that determines whether you will get induction or not.

"Q. What about shape? A. Well, generally speaking, the shape is of less basic importance than the arrangement. You can get quite appreciable induction with any number of shapes if the arrangement is right."

We are satisfied the trial judge correctly concluded that Reinauer, like others skilled in the art, saw that by rearranging the essential parts of the Church device, he could economically put the ambient air to good use. Neither the method Claim 1 nor the apparatus Claim 9

stated patentable matter over the basic Church reference. Since only one inventive concept was presented, the judgment of the District Court is

Affirmed.